MARK P. ROBINSON, JR., SBN 054426
MICHELLE M. WEST, ESQ., SBN 228737
mwest@rcrlaw.net
**ROBINSON, CALCAGNIE & ROBINSON**
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

ERIC PEARSON, Texas Bar No. 15690472
MICHAEL HEYGOOD, Texas Bar No. 00784267
JAMES CRAIG ORR, JR., Texas Bar No. 15313550
CHARLES MILLER, Texas Bar No. 24007677
**HEYGOOD, ORR, REYES, PEARSON & BARTOLOMEI**
2331 W. Northwest Hwy., 2nd Floor
Dallas, Texas 75220
Telephone: (214) 526-7900
Facsimile: (214) 526-7910

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIKA STANDING and CHRIS BRISTOL,<br><br>   Plaintiffs,<br><br>v.<br><br>WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., WATSON PHARMA, INC., AND JOHN DOES 1-100,<br><br>   Defendants. | CASE NO. 2:09-CV-00527-PSG-AJW<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1.   Strict Products Liability/Wrongful Death<br><br>2.   Negligence/Wrongful Death<br><br>3.   Breach of Express and Implied Warranties/Wrongful Death<br><br>Demand for Jury Trial |

Plaintiffs Monika Standing and Chris Bristol (collectively, "Plaintiffs") the parents and wrongful death heirs of Nicole Bristol ("Decedent"), file this First Amended Complaint for Damages complaining of Defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., Watson Pharma, Inc., and John Does 1-100, and for cause of action would show:

## PARTIES

1.  Plaintiff Monika Standing is a citizen of the State of Colorado and the surviving mother and wrongful death heir of Decedent. Plaintiff Chris Bristol is a citizen of the State of California and the surviving father and wrongful death heir of Decedent.

2.  Defendant Watson Pharmaceuticals, Inc. was and is a corporation organized and existing under the laws of the State of Nevada. Watson Pharmaceuticals, Inc.'s home office is at 311 Bonnie Circle, Corona, CA 92880-2882. Watson Pharmaceuticals, Inc. has done and is doing business in California. Watson Pharmaceuticals, Inc. may be served with process by serving its registered agent, CT Corporation System at 818 W. 7th Street, Los Angeles, CA 90017-3407 or by delivering a copy of the summons and complaint to Paul Bisaro any other officer or managing agent at 311 Bonnie Circle, Corona, CA 92880-2882.

3.  Defendant Watson Laboratories, Inc., a subsidiary of Watson Pharmaceuticals, Inc., was and is a corporation organized and existing under the laws of the State of Nevada. Watson Laboratories, Inc.'s home office is 311 Bonnie Circle, Corona, CA 92880-2882. Watson Laboratories, Inc. has done and is doing business in California. Watson Laboratories, Inc. may be served with process by serving its registered agent, CT Corporation System at 818 W. 7th Street, Los Angeles, CA 90017-3407 or by delivering a copy of the summons and complaint to Paul Bisaro any other officer or managing agent at 311 Bonnie Circle, Corona, CA 92880-2882.

4.  Defendant Watson Pharma, Inc., a subsidiary of Watson Pharmaceuticals, Inc., is corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New Jersey. Watson Pharma, Inc. has done and is doing business in California. Watson Pharma, Inc. may be served with process by serving its registered agent, CT Corporation System at 818 W. 7th Street, Los Angeles, CA 90017-3407 or by delivering a copy

of the summons and complaint to Allen Chao or any other officer or managing agent at 360 Mount Kemble Avenue, Morristown, NJ 07960-6662.

5. The true names or capacities, whether individual, corporate, or otherwise, of Defendants Does 1-100, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs believe and allege that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiffs as alleged herein.

## JURISDICTION AND VENUE

6. This Court lacks subject matter jurisdiction over this case because the claims in this case are based on state law and there is no diversity of citizenship because Plaintiff Chris Bristol and Defendants Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc. are residents of the State of California. Venue is proper in Orange County (once the case is remanded) because, at all times relevant hereto, the Watson Defendants promoted, marketed, distributed, warranted, and sold the Patch in interstate commerce and in the County of Orange, State of California. Furthermore, Defendants conducted substantial business in the County of Orange, advertised the Patch in this county, received substantial compensation and profits from sales of the Patch in this county, and made material omissions and misrepresentations and committed breaches of warranties in this county. Venue is also proper in Los Angeles because Decedent's fentanyl overdose and resulting death occurred in Los Angeles County.

## FACTS

7. This suit arises out of the wrongful death of Decedent due to the wrongful conduct of Defendants. Decedent, while a patient of Dr. Jeanne Myriam Axler, was given a prescription for 75 mcg Watson (fentanyl transdermal system) patches. Decedent was wearing one of these patches (the "Bristol Patch") at the time of her death and it was the cause of her death. The Watson Patch worn by Decedent at the time of her death was designed and manufactured by Defendant

Watson Laboratories, Inc. The Bristol Patch was marketed and distributed by Defendants Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., Watson Pharma, Inc. shall hereinafter be collectively referred to as the "Watson Defendants."

8. Watson (fentanyl transdermal system) patches also came in other sizes such as 25, 50, and 100 mcg. As referenced herein, the "Patch" shall refer to Watson (fentanyl transdermal system) patches of any size unless specified otherwise.

9. The Patch is a multi-layer system containing a gel which has the drug fentanyl in it. Fentanyl is an extremely dangerous drug that is at least 80 times stronger than morphine. Fentanyl is classified as a Schedule II controlled substance by the FDA and is generally used to relieve pain.

10. The Patch is applied by the patient and delivers fentanyl though the patient's skin. The Watson Defendants design, manufacture, market and sell the Patch with the intention that it will release a certain amount of fentanyl into a patient at a certain rate, and thus produce a certain level of fentanyl in the blood of the patient. In other words, if a Patch functions as intended and it is properly used by the patient, the patient should not receive a harmful dose of fentanyl. Decedent never abused the Patch or used it inappropriately.

11. The Bristol Patch was manufactured at the Watson Defendants' facility in Corona, California. The Bristol Patch was made utilizing a reservoir design which means that the fentanyl gel is inserted into a reservoir between two of the patch's layers.

12. The Patch is unsafe for its intended or reasonably foreseeable use because it can and does leak and/or because it otherwise causes lethal levels of fentanyl in patients.

13. Another design for Fentanyl patches existed at the time the Bristol Patch was manufactured called the "matrix" design. At all relevant times, the Watson Defendants could have made fentanyl patches of a matrix design, as

opposed to a reservoir design. The matrix technology cannot leak fentanyl. A sealed multi-laminate design could have also been used.

14. In 2008, the Watson Defendants recalled a lot of fentanyl patches because of leaking patches.

15. Decedent was prescribed the Patch by Dr. Axler for pain. Decedent filled the prescription on January 23, 2008. Decedent was found dead on February 9, 2008.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: STRICT PRODUCTS LIABILITY
### (By Plaintiffs against Defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., and Watson Pharma, Inc.)

16. Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 15 and make such allegations a part hereof by reference.

17. The Watson Defendants are liable under the theory of product liability. The Watson Defendants at all times material hereto engaged in the business of designing, manufacturing, assembling, selling, marketing, and/or supplying the Patch, including the Bristol Patch. The Bristol Patch was in a defective condition at the time it was designed, manufactured, sold, and/or marketed by the Watson Defendants and at the time it left the Watson Defendants' possession that rendered the Patch unsafe for its intended or reasonably foreseeable use. Decedent was unaware of the defective condition of the Bristol Patch at the time she used the product in the manner and for the purpose which it was intended. The defective condition was a producing and proximate cause of Decedent's death and the damages described herein. The Bristol Patch was in the control of the Watson Defendants at the time the defect occurred. Further, the injury sustained by Decedent, fentanyl toxicity, is the exact type of injury that a defective Patch causes. The Bristol Patch reached Decedent without any substantial change in its condition. Because of the nature of ingredients or natural characteristics of the Bristol Patch, use of it involved substantial risk of injury.

The exposure to risk of injury from the Bristol Patch outweighed any benefits from the product's use. Without limitation, the Bristol Patch was defective because it malfunctioned and did not perform as intended and designed.

### A. Manufacturing Defect

18. The Bristol Patch was defective because of the existence of a manufacturing flaw that rendered the Patch unsafe for its intended or reasonably foreseeable use at the time it left the Watson Defendants and such defect was a legal cause of Decedent's death and the damages asserted herein. Without limitation, the Bristol Patch was defective because it malfunctioned and did not perform as intended and designed. Without limitation, the Bristol Patch was defective because it had a seal defect.

### B. Failure to Warn

19. Pleading further and without waiver of the foregoing, the Bristol Patch was defective because it lacked adequate warnings and instructions. There was a risk of harm, which risk is inherent in the Patch or that may arise from the intended or reasonably foreseeable or scientifically discoverable at the time of the exposure. The Watson Defendants, who exercised substantial control over the content of the warnings and/or instructions, knew or should have known of the risks at the time they marketed and sold the Bristol Patch but failed to provide warnings of the dangers or instructions for safe use and/or failed to provide adequate warnings and/or instructions. The absence of such warnings and/or instructions rendered the product unsafe for its intended or reasonably foreseeable use. Such failure to warn and/or instruct was a legal cause of Decedent's death and the damages asserted herein.

20. For these reasons, the Watson Defendants are strictly liable under applicable products liability law without regard to proof of negligence.

///

## SECOND CAUSE OF ACTION: NEGLIGENCE

**(By Plaintiffs against Defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., and Watson Pharma, Inc.)**

21. Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 20, inclusive of the First Cause of Action, and make such allegations a part hereof by reference.

22. The Watson Defendants had a duty to exercise ordinary care in the design, manufacture, marketing, sale, or distribution of the Patch into the stream of commerce to ensure that the Patch was safe for its intended or reasonably foreseeable use, including, without limitation, a duty to assure that the Patch did not cause users to suffer from dangerous side effects, including death. The Watson Defendants failed to exercise ordinary care in the design, manufacture, marketing, sale, testing, reporting to the FDA, quality assurance, quality control or distribution of the Bristol Patch into interstate commerce in that the Watson Defendants knew or should have known that the Patch created a high risk of dangerous side effects, including death.

23. More specifically, the Watson Defendants' negligence in the design, manufacture, marketing, testing and sale of the Patch, includes, without limitation:

    a. Providing misleading, inadequate and/or insufficient warnings regarding the product;

    b. Failure to use due care in designing and manufacturing the Patch;

    c. Failure to use proper materials reasonably suited to the manufacture of the Patch;

    d. Failure to provide to the FDA information or data relevant to the safety of the Patch;

    e. Failure to obtain easily accessible information or data relevant to the safety of the Patch;

    f. Not performing sufficient testing of the Patch to confirm or

    ensure that is safe for its intended use;

g. Failure to use due care to test and inspect the Patch to determine its durability and functionality for the purpose for which it was intended;

h. Failure to ensure the Patch is made without seal or other defects;

i. Failure to conduct adequate testing and post-marketing surveillance to determine the safety of the Patch;

j. Misrepresenting that the Patch is safe for use;

k. Inadequate or insufficient inspection for defects;

l. Inadequate and/or insufficient research into the safety of the product prior to sale;

m. Inadequate and/or insufficient monitoring or research regarding adverse events;

n. Failure to list death as an adverse event;

o. Failure to provide adequate training, knowledge or information to physicians, distributors, or sellers of the product;

p. Marketing the Patch for unsafe uses;

q. Failure to adequately warn individuals of the dangerous and lethal side effects of the product;

r. Formulating and designing the product;

s. Making the product;

t. Inspecting and testing the product;

u. Packaging the product; and

v. Other and further particulars as will be proven at trial.

24. The negligent conduct of the Watson Defendants, as alleged above, was a legal cause of Decedent's death and the damages claimed herein.

///

## THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

### (By Plaintiffs against Defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., and Watson Pharma, Inc.)

25.  Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 24, inclusive of the First and Second Causes of Action, and make such allegations a part hereof by reference.

26.  The Watson Defendants represented and marketed the Patch as being safe and effective. After the Watson Defendants knew or should have known of the risk of using the Patch, the Watson Defendants failed to communicate to the FDA, Decedent, physicians, distributors, pharmacists, and/or the general public, that proper use of the Patch could cause serious injury and/or death. The Watson Defendants instead communicated to all such persons/entities that the Patches were safe for use. Specifically, the Watson Defendants' misrepresentations include, without limitation, a representation that the Patches would produce a maximum fentanyl blood concentration that was much lower that the fentanyl concentration found in Decedent's blood at the time of her death and a representation that the Patches were safe for use and a representation that the Patches can be used with other medications

27.  Therefore, Plaintiffs bring this cause of action against the Watson Defendants under the theory of negligent misrepresentation for the following reasons:

    a.  The Watson Defendants failed to warn of the defective condition of the Patch, as manufactured and/or supplied by the Watson Defendants;

    b.  The Watson Defendants, individually, and through their agents, representatives, distributors and/or employees, negligently misrepresented material facts about the Patch in the course of their business in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such

misrepresentations. Alternatively, the Watson Defendants made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

c. The above misrepresentations were made to the FDA, Decedent, physicians, pharmacists, as well as the general public;

d. The Watson Defendants supplied false information regarding the safety and efficacy of the Patch for the guidance of others, including Decedent;

e. The Watson Defendants failed to exercise reasonable care or competence in obtaining or communicating information regarding the safety and efficacy of the Patch to Decedent and others; and

f. Decedent and others justifiably relied on the Watson Defendants' misrepresentations; and

g. Consequently, Decedent's use of the Patch was to her detriment. The Watson Defendants' negligent misrepresentations was a legal cause of Decedent's death and the damages claimed herein.

## FOURTH CAUSE OF ACTION: BREACH OF WARRANTY

**(By Plaintiffs against Defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., Watson Pharma, Inc.)**

28. Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 27, inclusive of the First, Second, and Third Causes of Action, and makes them a part hereof by reference.

29. The Watson Defendants impliedly and expressly warranted to Decedent that the Bristol Patch, including each and every component part thereof, was fit for the purpose for which it was to be used and was free from design and manufacturing defects to consumers and users thereof.

30. The Bristol Patch, including each and every component part thereof, was not free from such defects or fit for the purpose for which it was to be used and was, in fact, defectively manufactured and designed and imminently

dangerous to consumers and users. The Bristol Patch was capable of causing, and did cause, Decedents's death while being used in an intended and/or reasonably foreseeable manner, thereby rendering the Bristol Patch unsafe and dangerous for use by the consumer or user.

31. On February 9, 2008, as a direct and legal cause of each breach of warranty by the Watson Defendants, while Decedent was using the Bristol Patch in the fashion intended and foreseen by the Watson Defendants, Decedent suffered a fatal fentanyl overdose as a result of the Bristol Patch's failure to work as warranted and represented.

## DAMAGES

32. The unlawful acts and practices described above are and were a legal cause of Decedent's injuries and death. Plaintiffs are Decedent's wrongful death heirs at law. Plaintiffs seek all damages available under California or any other applicable law, including without limitation: loss of love; affection; society; companionship; economic loss; support; right of support; expectation of future support; counseling; solace; and moral support in a general amount that will be stated according to proof. In addition, Plaintiffs are seeking all actual damages allowed by law caused by Patch Defendants' defective product and their wrongful acts and/or omissions alleged herein.

WHEREFORE, Plaintiffs prays for judgment against the Watson Defendants, and each of them:

1. General damages in an amount in excess of the minimum jurisdictional limits of this court;

2. For funeral, burial and memorial expenses according to proof at the time of trial, together with interest on all such amounts;

3. For loss of support, according to proof;

4. For prejudgment interest and post-judgment interest until paid;

///

1  5. For costs of suit incurred herein; and,

2  6. For such other and further relief as this Court may deem just and
3 proper.

4
DATED: February 5, 2009
5
           **ROBINSON, CALCAGNIE & ROBINSON**
6

7
        By: _____
8          MARK P. ROBINSON, JR. SBN 054426
          MICHELLE M. WEST, SBN 228737
9          Attorneys for Plaintiffs

10 **Of Counsel:**
James Craig Orr, Jr.
11 Texas Bar No. 15313550
Charles W. Miller
12 Texas Bar No. 24007677
**Heygood, Orr, Reyes & Bartolomei**
13 2331 W. Northwest Highway, 2nd Floor
Dallas, TX 75220
14 214-526-7900 Telephone
214-526-7910 Facsimile

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands trial by jury.

DATED: February 5, 2009          ROBINSON, CALCAGNIE & ROBINSON

By: _____
MARK P. ROBINSON, JR. SBN 054426
MICHELLE M. WEST, SBN 228737
Attorneys for Plaintiffs

**Of Counsel:**
James Craig Orr, Jr.
Texas Bar No. 15313550
Charles W. Miller
Texas Bar No. 24007677
**Heygood, Orr, Reyes & Bartolomei**
2331 W. Northwest Highway, 2nd Floor
Dallas, TX 75220
214-526-7900 Telephone
214-526-7910 Facsimile