JS - 6

cc: see G - 75 attached

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MONIKA STANDING, ET. AL.,** ) | **Case No.  CV09-0527 DOC(ANx)** |
| ) | |
| **Plaintiff(s),** ) | Los Angeles County Superior Court Case No.: |
| ) | BC405990 |
| **v.** ) | |
| ) | |
| **WATSON PHARMACEUTICALS** ) | **ORDER  GRANTING  MOTION  TO** |
| **INC., ET. AL.,** ) | **REMAND   AND   RENDERING** |
| ) | **MOTION TO QUASH SERVICE AND** |
| **Defendant(s).** ) | **TO DISMISS MOOT** |
| ) | |
| ) | |
| _____ ) | |

Before the Court is Plaintiffs Monika Standing and Chris Bristol's Motion to Remand this case to the Superior Court of the State of California, County of Orange, pursuant to 28 U.S.C. § 1447(c) on the basis that the Court lacks subject matter jurisdiction (the "Motion").  After considering the moving, opposing, and replying papers, and for the reasons stated below, the Court hereby GRANTS the Motion.  As a result, the Court renders Defendants' Motion to Quash Service and to Dismiss filed with the Court on March 11, 2009, MOOT.

## I.    BACKGROUND

This is an action for the wrongful death of decedent, Nicole Bristol, who died on February 9, 2008,

1   from using an allegedly defective 75 mcg/hour fentanyl patch.  An autopsy revealed that the

2   concentration of fentanyl in Nicole's blood was toxic, nearly nine times higher than it should have

3   been if the patch was properly functioning.  Plaintiffs are Nicole's parents.  Plaintiff Monika

4   Standing, Nicole's mother and a citizen of Colorado, brought suit against Watson Laboratories, Inc.,

5   Watson Pharmaceuticals, Inc., and Watson Pharma, Inc. (collectively, the "Watson Defendants")

6   on January 21, 2009, in California state court, alleging strict products liability, negligence in the

7   design, manufacture, and marketing of the fentanyl patches, and breach of warranty.  Plaintiff

8   Standing alleges that the Watson Defendants designed, manufactured, and marketed the patches that

9   were used by her daughter.  (complaint, ¶¶ 6,7).

10   Watson Pharma, Inc., a citizen of Delaware and New Jersey, removed this action to federal

11   court only one day later on January 22, 2009, prior to service of the complaint on any of the

12   defendants.  Watson Pharmaceuticals and Watson Laboratories are both citizens of Nevada and

13   California.  Watson Pharma and Watson Laboratories are both subsidiaries of the parent company

14   Watson Pharmaceuticals.  In its Notice of Removal, Watson Pharma states that removal is proper

15   under 28 U.S.C. § 1441(b) despite the presence of forum defendants in the action because none of

16   the forum defendants (i.e. Watson Pharmaceuticals and Watson Laboratories) had been served with

17   the complaint prior to removal (Notice of Removal, ¶ 16).

18   On February 6, 2009, Plaintiff Monika Standing filed a First Amended Complaint ("FAC")

19   adding decedent Nicole Bristol's father and California citizen, Christopher Bristol, as an additional

20   plaintiff. On February 19, 2009, Plaintiffs claim to have effectuated service of the FAC on all three

21   entities,[1] though Defendants contest such service, claiming that the FAC is not the controlling

22   pleading in this action.[2]  Plaintiffs brought the instant Motion to Remand on the same day.  Plaintiffs

23

24   [1]Due to the interrelationship between the defendants, the Court notes that service

25   (if effective) on all three, forum and non-forum, occurs simultaneously because the agent
    for service of process of each corporation is the same woman, Margaret Wilson.  See

26   Docket Nos. 30, 31, and 32.

27   [2]Defendants brought a Motion to Quash Service and to Dismiss on March 11,

28   2009.

argue that removal under Section 1441(b) was improper, and the forum defendant rule should still apply to prohibit removal.  Even though no forum defendants were yet served, Plaintiffs contend that the Court should not adopt a literal interpretation of Section 1441(b) that allows removal in these circumstances where Plaintiffs have not yet served anyone.  Further, Plaintiffs point out that due to the addition of Plaintiff Bristol, there is no longer complete diversity between the parties.  Defendants counter that the Court should adopt a plain meaning interpretation of Section 1441(b) and allow removal even if Plaintiffs have not yet served any defendants.  Defendants further argue that the forum defendants here were fraudulently joined to the action.  Defendants also claim that Plaintiff Bristol was not properly joined to this litigation, and thus his citizenship should be disregarded.

## II.   LEGAL STANDARD

Remand may be ordered for lack of subject matter jurisdiction or any defect in the removal procedure.  28 U.S.C. § 1447(c).  Removal of state actions is allowed only if the plaintiff could have originally filed the action in federal court.  *See* 28 U.S.C. § 1441.  "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."  *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999) (overruled on other grounds); *see Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Further, a court does not consider the citizenship of a "fraudulently joined" defendant when determining whether complete diversity exists such that removal is proper pursuant to 28 U.S.C. § 1441(b).  *Morris v Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  A defendant is "fraudulently joined" when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."  *Morris*, 236 F.3d at 1067 (quoting *McCabe v Gen. Foods Corp.*, 811 F.2d 1136, 1339 (9th Cir. 1987).  The removing defendant may submit facts showing that a resident defendant has no real connection with the action.  *Ritchey*, 139 F.3d at 1319.

## III.   DISCUSSION

Though the parties dispute whether Christopher Bristol was properly joined in the action and thus destroyed complete diversity, the Court need not reach that issue.  For the same reasons as

identified in this Court's order remanding a related case, *Kazim Mohammed, et al. v. Watson Pharmaceuticals, Inc., et al.*, SACV 09-0079 DOC (Anx), the Court finds that removal was not proper in the first instance.  The Court reiterates that reasoning here and accordingly remands.

**A.  "[A]nd served" Requirement under section 1441(b).**

Neither party contests that this action (at the time of removal and prior to the addition of Plaintiff Bristol) could have originally been filed in federal court pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, and the action is between citizens of different states.  However, even if such diversity jurisdiction is present, 28 U.S.C. § 1441(b) prohibits removal if one or more of the named defendants is a citizen of the forum state, California in the instant action.  The statute states, in pertinent part, that a case can be removed based on diversity jurisdiction "only if none of the parties in interest properly joined *and served* as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b) (emphasis added); *see also Lively v. Wild Oats Mkts.*, 456 F.3d 933, 939 (9th Cir. 2006).  Known as the "forum defendant rule," the parties dispute how it applies (or should apply) to the instant case.

Plaintiffs bring their motion, in part, based on the "and served" language in 28 U.S.C. § 1441(b), claiming that the forum defendant rule should still apply to prohibit removal here.  It is undisputed that Watson Pharma, the only non-forum defendant, removed the action prior to any defendant receiving service of process.  Indeed, the complaint was filed on January 21, 2009.  Defendant Watson Pharma removed the case to this Court only one day later on January 22, 2009.  Plaintiffs allege that they effectuated service of process simultaneously on all defendants on February19, 2009, though Defendants contest this service by arguing that the FAC is not the controlling pleading.  On the same day, Plaintiffs brought their Motion to Remand.

As Plaintiffs point out, the Watson Defendants argue that the plain language of the "joined and served" provision allows for removal in these circumstances.  However, Plaintiffs indicate that federal district courts are split on the proper interpretation of the "and served" language.  While many courts adhere to the plain language argument as advanced by the Watson Defendants, others hold that a literal interpretation of the provision runs contrary to congressional intent and the purpose behind the forum defendant rule.  The Ninth Circuit has yet to address the issue.

1    Recognizing the district court split and the lack of binding authority on this Court, the Court
2    proceeds to depart from a literal interpretation of Section 1441(b), reasoning that such an
3    interpretation in these circumstances thwarts the purpose of Section 1441(b) and merely promotes
4    gamesmanship on the part of removing defendants.  In so finding, the Court agrees with district
5    courts that have found Section 1441(b) is not implicated where the non-forum defendant (or forum
6    defendant) seeks to remove the action prior to the service of any defendant.  *See e.g. Holmstrom v.*
7    *Harad*, No. 05 C 2714, 2005 WL 1950672, at *2 (N.D.Ill. Aug. 11, 2005) (finding that "the policy
8    of the 'joined and served' requirement is not implicated in this situation....When no defendant has
9    been served, however, the non-forum defendant stands on equal footing as the forum
10   defendant....[T]he protection afforded by the 'joined and served' requirement is wholly unnecessary
11   for an unserved non-forum defendant."); *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.*, No.
12   Civ. A. 3:97-CV-0945-P, 1998 WL 119528, at *3, n.3 (N.D.Tex. March 5, 2008); *Sullivan v.*
13   *Novartis Pharmaceuticals Corp.*, 575 F. Supp. 2d 640, 646 (D.N.J. 2008); *Oxendine v. Merck and*
14   *Co., Inc.*, 236 F. Supp. 2d 517, 524-5 (D.Md. 2002); *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734-
15   5 (N.D.Ill. 2007).

16          The purpose behind the forum defendant rule and its resulting limit on removal relates to the
17   rationale for diversity jurisdiction.  As the Ninth Circuit has stated, "Removal based on diversity
18   jurisdiction is intended to protect out-of-state defendants from possible prejudices in state
19   court....The need for such protection is absent, however, in cases where the defendant is a citizen
20   of the state in which the case is brought.  Within this contextual framework, the forum defendant
21   rule allows the plaintiff to regain some control over forum selection by requesting that the case be
22   remanded to state court."  *Lively*, 456 F.3d at 940.  Thus, the overarching purpose of the forum
23   defendant rule is to prevent certain cases properly brought in state court from ending up in federal
24   court.

25          As the *Sullivan* Court noted, the "properly joined and served" language of the forum
26   defendant rule was not originally part of the statutory text but was added through amendment in
27   1948.  *Sullivan*, 575 F. Supp. 2d at 644.  Despite a thorough search of the legislative history, the
28   *Sullivan* Court could not find any explicit discussion of the purpose for the added language.  *Id.*

Despite the congressional silence, the *Sullivan* Court reasoned that "the purpose of the 'properly joined and served' requirement of section 1441(b) is abundantly clear in light of the historical development of the policy of the remand provisions, the practical application of the 'joined and served' provision by district courts in recent decades, and common sense." *Id*. That apparent purpose, as identified by the *Sullivan* Court and many other district courts, is to prevent plaintiffs from improperly joining forum defendants that they do not actually intend to pursue in order to prevent removal from state court under Section 1441(b), a pervasive problem at the time of the amendment. *Id*. at 645; *see also Stan Winston Creatures, Inc. v. Toys R Us, Inc.,* 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003) ("The purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve."); *Brown v. Organon USA Inc.*, No. Civ. A. 07-3092(HAA), Civ. A. 07-5253(HAA), Civ. A. 07-5916(HAA), 2008 WL 2625355, at *7 (D.N.J. June 27, 2008); *Allen v. GlaxoSmithKline PLC*, No. 07-5045, 2008 WL 2247067, at *6 (E.D.Pa. May 30, 2008); *DeAngelo-Shuayto v. Organon USA Inc.*, No. 07-2923, 2007 WL 4365311, at * 1; *In re Aredia and Zometa Products Liability Litigation*, No. 3:06-MD-1760, 2007 WL 2905247, at * 2 (M.D.Tenn. Oct. 3, 2007); *Vivas v. Boeing Co.*, 486 F. Supp. 2d at 734. Thus, the "joined and served" language was meant to prevent plaintiffs from improperly exploiting the limits on removal as generally provided for under the forum defendant rule.

The Court agrees with Plaintiffs that if the purpose behind the statute is to prevent procedural gamesmanship by plaintiffs through improper joinder, a literal interpretation of the "joined and served" provision that promotes such gamesmanship by defendants through allowing removal before a plaintiff has a meaningful chance to serve any defendant both undermines the general purpose of the forum defendant rule (i.e. to keep certain cases in state court) and inappropriately prevents plaintiffs from litigating in the forum of their choice. *See* O*xendine*, 236 F. Supp. 2d at 524 ("removability can not rationally turn on the timing or sequence of service of process"); *Vivas*, 486 F. Supp. 2d at 734 ("[T]o allow a resident defendant to remove a case before a plaintiff even has a chance to serve him would provide a vehicle for defendants to manipulate the operation of the removal statutes. Allowing either party to do that would be against what the courts have long

6

1    understood to be Congress's intent."); *Brown v. Organon Int'l. Inc., et al.*, Nos. 07-3092 (HAA),

2    07-3456(HAA), 08-2021(HAA), 2008 WL 2833294, at *4 (D.N.J. July 21, 2008) (holding that a

3    literal interpretation of Section 1441(b) promotes defendant gamesmanship by "allow[ing]

4    defendants to avoid the imposition of the forum defendant rule as long as they are monitoring state

5    dockets and avoiding service"); *Sullivan*, 575 F. Supp. 2d at 647 ("[G]iven that the purpose of the

6    'properly joined and served' language is to prevent one form of gamesmanship - improper joinder -

7    the court finds that allowing defendant to engage another type of gamesmanship - a hasty filing of

8    a notice of removal - is demonstrably at odds with Congressional intent.").

9        In such circumstances, the Court is allowed to depart from the plain meaning of the statute,

10   as many district courts have done in interpreting the same statutory provision:

11            When the meaning has led to absurd or futile results, however, this

12            Court has looked beyond the words to the purpose of the act.

13            Frequently, even when the plain meaning did not produce absurd results

14            but merely an unreasonable one 'plainly at variance with the policy of

15            the legislation as a whole' this Court has followed that purpose, rather

16            than the literal words.

17   *U.S. v. Am. Trucking Ass'ns*, 310 U.S. 534, 543, 60 S. Ct. 1059 (1940).

18       At a minimum, this Court finds that a plain meaning interpretation of the statute

19   produces unreasonable results at variance with the policy of the legislation as a whole.  The purpose

20   of the statute is to prevent gamesmanship by plaintiffs and should not allow for a similar

21   gamesmanship by defendants.  Further, as stated above, "[t]he result of blindly applying the plain

22   'properly joined and served' language of section 1441(b) is to eviscerate the purpose of the forum

23   defendant rule, " as defendants could effectively always prevent imposition of the forum defendant

24   rule by monitoring state dockets and removing an action before a [plaintiff can serve any party.

25   *Sullivan*, 575 F. Supp. 2d at 646-7.

26       Further, to the extent Defendants suggest, through their reliance on *Gecht*, that if Congress

27   had wanted to prevent removal in these circumstances, it could have so stated and thus the plain

28   language interpretation should hold, this Court rejects such an argument for the same reasons

7

articulated by the S*ullivan* Court.  In *Gecht*, a Northern District of California Court rejected any argument that the purpose of the statute should prevent removal by a defendant when the plaintiff has not had a meaningful opportunity to serve any defendant:

> [I]f Congress had wanted to ensure that removal would not be appropriate until it was clear that Plaintiff was trying to prevent removal by speciously naming resident defendants, Congress could have provided that no removal petition could be filed until one or more nonresident defendant had been joined and served.  The statute also could have been written to give a plaintiff, e.g. 30 or 60 days to effect service before permitting a defendant to remove.

*City of Ann Arbor Employees' Retirement System v. Gecht*, No. C-06-7453 EMC, 2007 WL 760568, at *9 (N.D.Cal. March 9, 2007).  However, as the *Sullivan* Court astutely points out, a Congress sitting in the 1940s could not have adequately had these concerns in mind:

> Congress could not have anticipated the tremendous loophole that would one day manifest from technology enabling forum defendants to circumvent the forum defendant rule by, inter alia, electronically monitoring the state court dockets.  Thus, Congress would have had no thought to wording the statute with this modern problem in mind.

*Sullivan*, 575 F. Supp. 2d at 645.  Following this logic, the Court agrees that a literal interpretation of Section 1441(b) disrupts the policy behind the forum defendant rule.

Thus, in line with *Holstrom* and district courts following it, the Court finds that removal under Section 1441(b) by a non-forum defendant where no defendants have yet been served is improper because it promotes gamesmanship by defendants and likely deprives plaintiffs of a meaningful opportunity to effectuate service.  As a result, the "joined and served" requirements of Section 1441(b) are not implicated by the facts of the instant case where none of the Watson Defendants had been served prior to removal, and pursuant to *Holstrom*, removal was improper at this stage.  The Court considers that its outcome here is also in line with Ninth Circuit precedent recognizing that statutory procedures for removal are to be strictly construed against removal and that there is a

1   strong presumption against removal. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685

2   (9th Cir. 2006); *Gaus*, 980 F.2d at 566.

3   **B.   Fraudulent Joinder**

4         Defendants argue, in the alternative, that the forum defendants Watson Pharmaceuticals and

5   Watson Laboratories are fraudulently joined parties, implicating the "properly joined" language of

6   Section 1441(b).  As a result, this Court should disregard their citizenship for diversity purposes and

7   removal regardless of the "and served" language.  However, for the following reasons, the Court

8   rejects such an argument.

9         Plaintiffs first contend that the Watson Defendants waived the right to argue fraudulent

10  joinder because Watson Pharma's Notice of Removal did not explicitly identify fraudulent joinder

11  as a basis for removal.  Instead, Watson Pharma indicated that removal was proper under Section

12  1441(b) because no forum defendant had yet been served with the complaint.  Noting that removal

13  must take place within 30 days of receipt of the complaint, 28 U.S.C. § 1446(b), Plaintiffs point out

14  that any amendment to the Notice of Removal can be made after the 30-day clock has run only if

15  the amendment corrects defective allegations of jurisdiction; amendments after 30 days cannot add

16  a new substantive basis for removal. *ARCO Envtl. Remediation, L.L.C. v Dep't of Health and Envtl.*

17  *Quality*, 213 F.3d 1108, 1117 (9th Cir. 2000).   A number of district courts have found that

18  allegations of fraudulent joinder constitute a new substantive basis for removal and must be raised

19  before the 30-day window expires. *See Tincher v. Ins. Co. of State of Penn.*, 268 F. Supp. 2d 666,

20  667-8 (E.D.Va. 2003); *Dean Witter Reynolds, Inc. v. Swett & Crawford*, No. C-92-3841-JPV, 1992

21  U.S. Dist. LEXIS 20093, at *2-3 (N.D.Cal. Dec. 23, 1992); *Cohen v. GTE Gov't Syss. Corp.*, No

22  C-92-20783, 1993 U.S. Dist. LEXIS 7914, at *4-5 (N.D.Cal. Apr. 6, 1993).  Plaintiffs do not make

23  it clear if they are suggesting that the 30-day time frame should run from the date Watson Pharma

24  removed (January 22, 2009) or from the date Plaintiffs served all three Defendants (February 19,

25  2009).  Defendants raised their fraudulent joinder arguments on March 16, 2009.  This date is 30

26  days past the removal but not 30 days past the alleged service of process that the Defendants contest.

27  Thus, the Court finds it unclear whether the 30 day clock has actually expired.

28        Yet, regardless of the waiver issue, the Court finds that the Watson Defendants have not met

their heavy burden of demonstrating that Watson Laboratories and Watson Pharmaceuticals were fraudulently joined. A party is only deemed to have been "joined 'fraudulently'" if after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Kalawe v. KFC Nat. Mgmt. Co.*, Civ. No. 90-007799, 1991 WL 338566, at *2 (D. Hawaii July 16, 1991) (*citing Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). Further, "'district courts must not 'pretry' substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 204 (5th Cir. 1983) (*quoting B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 546 (5th Cir. 1981)). "The question is simply whether there is any possibility that plaintiff will be able to establish liability against the party in question." *Briano v. Conseco Life Ins. Co.*, 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000). "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package System, Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D.Cal. 2001) (*citing Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990) and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

Defendants contend that Plaintiffs have no viable claims against Watson Laboratories because the Watson Laboratories based out of Corona, California is not the Watson Pharmaceutical's subsidiary that manufactured fentanyl patches. Instead, Defendants allege that the Watson Laboratories based out of Utah is the actual subsidiary that manufactures fentanyl patches. However, Plaintiffs present evidence suggesting that the Corona-based Watson Laboratories was in fact involved in the manufacturing of the fentanyl patches. Plaintiffs provide the Court with a copy of the "Full Prescribing Information" that accompanies every box of 100 mcg/hr fentanyl patches obtained from Watson Pharmaceuticals' website that states the patches are "Manufactured by: Watson Laboratories, Inc., Corona, CA 92880 USA." Dec. of James Craig Orr, Jr. in Sup. of Reply ("Orr Dec."), ¶2, Exh. A. Plaintiffs also provide a snapshot from the Watson Pharmaceuticals' website of the packaging of a 75 mcg/hr fentanyl patch that includes the text "Watson Laboratories, Inc. Corona, CA 92880 USA." Id. at ¶3, Exh. B. This evidence at least

1   suggests that the Watson Laboratories based out of Corona, California and named as a defendant
2   in the instant action participates in the manufacturing of fentanyl patches.  Thus, Plaintiffs have the
3   possibility of recovering against the forum defendant Watson Laboratories for strict products
4   liability, negligence, and/or breach of warranty.

5        Defendants also argue that any alleged liability on behalf of Watson Pharma (the entity that
6   they concede sells and distributes fentanyl patches) cannot be attributed to the parent company
7   Watson Pharmaceuticals, citing the general rule that the existence of a parent-subsidiary relationship
8   alone is not enough to attribute the liability of the subsidiary to the parent.  *Doe v. Unocal Corp.*,
9   248 F.3d 915, 925-6 (9th Cir. 2001).  Defendants contend that Watson Pharmaceuticals does not
10  design, manufacture, market, or distribute fentanyl patches, but provide no evidence regarding the
11  nature of its relationship with Watson Pharma.  As Plaintiffs point out, the general rule identified
12  by Defendants is subject to exceptions when the parent company asserts extensive control over its
13  subsidiary, has a principal/agent relationship with its subsidiary, or when the subsidiary performs
14  services sufficiently important to the parent such that the parent would perform them in the
15  subsidiaries absence.  *See Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1235-6 (N.D.Cal.
16  2004); *E. & J. Gallo Winery v. EnCana Energy Servs.*, No. CV F 03-5412 AWI LJO, 2008 WL
17  2220396, at *11 (E.D.Cal. May 27, 2008); *Unocal Corp.*, 248 F.3d at 926, 928.  With virtually no
18  evidence presented by Defendants, Plaintiffs present evidence that suggests Watson Pharmaceuticals
19  is in fact involved in the manufacture, marketing, and/or distribution of fentanyl patches or at least
20  might have a closer relationship with its subsidiaries than it contends.  For example, on its website,
21  Watson Pharmaceuticals identifies itself as "a leading specialty pharmaceutical company that
22  develops, manufactures, markets, sells and distributes brand and generic pharmaceutical products."
23  Orr Dec., ¶ 5, Exh. D.  Further, fentanyl patches are listed in Watson Pharmaceuticals' online
24  "Product Database."  *Id.* at ¶6, Exh. E.  Watson Pharmaceuticals also was the entity that recalled a
25  number of defective fentanyl patches on August 8, 2008. Id. at ¶7, Exh. F.  Thus, considering the
26  strong presumption against finding fraudulent joinder, the Court cannot conclude that there is no
27  possibility Plaintiffs could recover from forum defendant Watson Pharmaceuticals.  As a result,
28  fraudulent joinder cannot form a basis for this Court to deny remand.

1    **IV.    DISPOSITION**

2         For the foregoing reasons, the Court hereby GRANTS the Motion to Remand.  As a result,

3    the Court renders MOOT Defendants' Motion to Quash Service of Summons and to Dismiss.

4

5    IT IS SO ORDERED

6

7    DATED: March 26, 2009

                                        _____
8                                            DAVID O. CARTER
                                          United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28